# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MALTA NIEVES, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>JUST ENERGY NEW YORK CORP.,<br><br>                    Defendant. | Civil Action No. _____<br><br>Class Action Complaint |

Plaintiff Malta Nieves ("Plaintiff" or "Ms. Nieves"), by her attorneys, Kohn, Swift & Graf, P.C., Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, and Mazie, Slater Katz and Freeman, LLC, as and for her class action complaint, alleges, with personal knowledge as to her own actions, and upon information and belief as to those of others, as follows:

## NATURE OF THIS CASE

1.      This action seeks to redress the improper pricing practices of Just Energy New York Corp. ("Defendant" or "Just Energy") that have caused thousands of New York consumers to pay considerably more for their electricity than they should otherwise have paid.

2.      Just Energy has taken advantage of the deregulation of the retail electricity market in New York by luring consumers into switching energy suppliers with false contractual promises that it offers market based variable rates for electricity. Just Energy lures consumers into switching by offering a teaser rate that is lower than local utilities' rates for electricity supply. When the teaser rate expires after a couple of months, Defendant switches customers to a variable rate, which it represents reflects "business and market conditions."

3. Just Energy's representations are deceptive. In fact, Just Energy's variable rates are substantially higher than those otherwise available in the energy market, and are not reflective of the business and market conditions on which Just Energy purports to base its variable rates. Just Energy's business model is simple: after the teaser rate expires, it charges exorbitant rates that are not based on business or market conditions, namely the rates other retailers charge for electricity and wholesale costs. As a result, New York consumers are being fleeced millions of dollars in exorbitant charges for electricity.

4. This suit is brought pursuant to the common law of New York on behalf of a class of consumers who purchased electricity from Just Energy from 2011 to the present. It seeks, *inter alia*, injunctive relief, actual damages and refunds, attorneys' fees, and the costs of this suit.

## PARTIES

5. Plaintiff Malta Nieves is a citizen of New York residing in Buffalo, New York. Ms. Nieves was a customer of Just Energy from approximately January 2011 through April 2012, and as a result of Defendant's deceptive conduct, she incurred excessive charges for electricity.

6. Defendant Just Energy New York Corp. is a Delaware corporation, with its principal place of business in Toronto, Canada.

## JURISDICTION

7. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 (the "Class Action Fairness Act").

8. This action meets the prerequisites of the Class Action Fairness Act, because the claims of the Class defined below exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendant.

9.  This Court has general personal jurisdiction over Defendant Just Energy because Just Energy has been doing business in New York through continuous, permanent, and substantial activity in New York.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). Substantial acts in furtherance of the alleged improper conduct occurred within this District and Plaintiff Nieves resides within this District.

## OPERATIVE FACTS

11. In 1996, New York deregulated the market for retail natural gas and electricity supply, a major break with past policy. Prior to deregulation, gas and electricity were supplied and distributed solely by local utility companies. Over the last several years, a number of states, including New York, have begun to change the regulations in the energy industry purportedly to enhance competition between energy providers. The notion is that competition would result in independent energy companies ("ESCOs") being more aggressive than the utility in reducing wholesale purchasing costs and thereby lower retail residential rates.

12. As part of the deregulation plan, ESCOs (like Just Energy) do not have to file the electricity rates it charges with the New York State Public Service Commission ("NYPSC") or the method by which it set its rates.

13. If a customer switches to an ESCO, the customer will have his or her energy "supplied" by the ESCO, but still "delivered" by their existing utility. The customer's existing utility continues to bill the customer for both the energy supply and delivery costs. The only difference to the customer is which company sets the price for the customer's energy supply.

14. After a customer switches to an ESCO, the customer's energy supply charge— based on a customer's kilowatt hour (for electricity)—is calculated using the supply rate charged by the ESCO and not the regulated rate charged by customer's former utility. The supply rate for

electricity charged is itemized on the customer's bill as the number of kilowatt hours ("kWh") multiplied by the rate. For example, if a customer uses 300 kWh at a rate of 11.0¢ per kWh, the customer will be billed $33.00 (300 x $.11) for his or her energy supply.

15. Just Energy takes advantage of the deregulation and the lack of regulatory oversight in the energy market to deceptively charge New York consumers exorbitant rates for electricity. In theory, energy deregulation allows consumers to shop around for the best energy rates, and it allows consumers to take advantage of market-based rates that decline when wholesale costs decline. However, Just Energy exploits deregulated markets with false promises that it offers market based variable rates for electricity. In fact, Just Energy's rates are substantially higher than other ESCOs or local utilities and they are not reflective of changes in wholesale rates.

16. Just Energy lures consumers to switch from their local utility companies or other energy suppliers, promising that it will offer market based variable rates for electricity. Just Energy's scheme falsely promises energy rates based on market conditions. However, in reality, after switching to Just Energy as a supplier, consumers' energy bills increase dramatically.

17. The Attorney General and NYPSC have taken note of the deceptive acts and practices among ESCOs (including Just Energy) in New York.

18. In 2008, Attorney General Andrew M. Cuomo announced an agreement with U.S. Energy Savings (now called "Just Energy") whose sales personnel deceived Western New York customers into entering into service contracts and paying more for energy services. The Attorney General's settlement with U.S. Energy Savings required the company to waive

hundreds of thousands of dollars in residential consumer termination fees and pay $200,000 in costs and penalties to the state of New York.[1]

19.     In 2016, the NYPSC stated that after considerable experience with energy service to mass market customers by ESCOs, it determined that the retail markets serving mass-market customers are not providing sufficient competition or innovation to properly serve consumers. As a result, the NYPSC is opening an evidentiary hearing to examine measures that must be taken to ensure that these customers can pay just and reasonable rates for commodity and other services from ESCOs.[2]

## Just Energy Charges Improperly High Electricity Rates

20.     Just Energy engages in a classic bait and switch deception scheme.  Just Energy lures consumers into switching to its electricity supply service by offering teaser rates that are much lower than its regular rates.

21.     In or around December 2010, a Just Energy representative came to Ms. Nieves' residence to solicit her to switch from her utility company, National Grid, to Just Energy with promises that Ms. Nieves would save money if she switched to Just Energy.

22.     In January 2011, Plaintiff made the switch to Just Energy for electricity, and she and Just Energy's contractual agreement is memorialized in Defendant's Terms And Conditions. In consideration for electricity supply, Plaintiff agreed to pay a variable rate based on market conditions.  Thereafter, she paid the rate she was charged.

23.     Plaintiff was initially placed on an introductory fixed rate plan for electricity, but she was subsequently switched to a variable rate plan.

---

[1] *See* https://ag.ny.gov/press-release/attorney-general-cuomo-stops-wny-natural-gas-provider-deceiving-consumers (last accessed on June 5, 2017).
[2] *See* http://documents.dps.ny.gov/search/Home/ViewDoc/Find?id=%7BF3E31C9F-5A4F-4B3E-AE5E-3624B3D691BA%7D&ext=pdf (accessed on May 25, 2017).

24. The representation that Just Energy's variable rate would be based on market conditions was reinforced by Just Energy's standard Residential Terms & Conditions, which was provided to Plaintiff by the Just Energy representative. The Terms & Conditions (attached as Exhibit "A") represent that the variable rate for electricity "will be determined by Just Energy according [sic] business and market conditions."

25. Any reasonable consumer would understand and expect that a variable rate based on business and market conditions would be commensurate with the rates offered by the local utility and other ESCOs. Ms. Nieves reasonably expected that Just Energy's variable rates for electricity would be based on business and market conditions, i.e., reflective of the price of electricity on the market and the rates offered by Ms. Nieves' former utility and other competitors in the market.

26. A reasonable consumer would also understand and expect that a variable rate based on business and market conditions would be reflective of changes in the wholesale market price for electricity. After all, that is the point of deregulation, to allow consumers to take advantage of the efficiencies of the market and to enjoy lower retail process when the wholesale market drops.

27. But the rates Just Energy charged Plaintiff were not commensurate with rates otherwise available in the market or with changes in wholesale rates.

28. Ms. Nieves paid Just Energy's variable rate until approximately April 2012. In or around April 2012, Ms. Nieves was terminated by Just Energy because she could no longer afford to make her payments due to the increase in the variable rate. The following table is a representative sampling which identifies the billing periods during this time, the variable rates Just Energy charged Plaintiff, and the corresponding rates National Grid would have charged for electricity (which is a reasonable representation of the available market rates):

| **Billing Period** | **Just Energy Rate** | **National Grid Rate** |
|---|---|---|
| 9/2011-10/2011 | .059525/kWh | .04419/kWh |
| 10/2011-11/2011 | .0575193/kWh | .04394/kWh |
| 11/2011-12/2011 | .0598401/kWh | .04185/kWh |
| 12/2011-1/2012 | .0597802/kWh | .0381/kWh |
| 1/2012-2/2012 | .05912/kWh | .043492/kWh |
| 2/2012-3/2012 | .055807/kWh | .04163/kWh |
| 3/2012-4/2012 | .055/kWh | .036294/kWh |

29. The rates New York utilities like National Grid charge is an accurate reflection of rates that are based on market conditions. In fact, New York utilities purchase electricity for their customers on the spot or daily market at the same market price per kilowatt hour other electricity retailers, including Just Energy, can purchase electricity for their customers.

30. For utility customers in New York who do not get their electricity supply from an ESCO, the utilities buy electricity from the New York wholesale electricity markets. The NYISO administers the short-term markets that utilities (and ESCOs) purchase electricity at the wholesale level for resale to their customers. The utilities' monthly rate is based upon the daily purchases by the utilities. Thus, the purchases made by the utilities from the NYISO that are aggregated to a monthly cost for their customers reflect actual short-term, monthly market costs.

31. That Just Energy's rate was substantially higher than the local utility's rate therefore demonstrates that Just Energy's rate is not in fact based on business and market conditions. In fact, at one point, Just Energy charged Plaintiff a rate that was more than 60% higher than National Grid's rate. Moreover, while National Grid's rate declined 14% from September 2011 to January 2012, Just Energy's rate remained steady. If Just Energy's rate was based on wholesale costs (as any reasonable consumer would expect of a variable rate based on business and market conditions), then its rate would have also declined during this period (because National Grid's rate is reflective of changes in the wholesale market cost of electricity).

32. A reasonable consumer would understand that the price the local utility or other ESCO charges is part of market conditions and that a priced based on market conditions would be consistent with the price charged by the local utility or other ESCO. However, Just Energy's prices are substantially higher than local utilities rates, as well as the rates other ESCOs charge.

33. Thus, Just Energy does not comply with its contractual promise to charge rates based on business and market conditions. Instead, consumers are charged rates that are substantially higher.

34. Just Energy's statements regarding its electricity rates are materially misleading, as the most important consideration for any reasonable consumer when choosing an energy supplier is price. No reasonable consumer who knows the truth about Just Energy's exorbitant rates would choose Just Energy as an electricity supplier.

35. In fact, all that Just Energy offers customers is electricity delivered by local utilities, a commodity that has the exact same qualities as electricity supplied by other ESCOs or local utilities. There is nothing to differentiate Just Energy from other ESCOs or local utilities, and the potential for a price based on market conditions is the only reason any reasonable consumer would enter into a contract for electricity with Just Energy.

36. Just Energy knows full well that it charges a rate that is unconscionably high, and the misrepresentations it makes with regard to the rate being market based were made for the sole purpose of inducing consumers to sign up for Just Energy's electricity supply so that it can reap outrageous profits to the direct detriment of New York consumers without regard to the consequences high utility bills cause such consumers. As such, Just Energy's actions were actuated by actual malice or accompanied by wanton and willful disregard for consumers' well-being.

37. Just Energy's misstatements and omissions caused injury to Plaintiff because she believed that she would be saving money by switching from National Grid to Just Energy's electricity plan. Plaintiff would not have enrolled in Just Energy's plan but for its false misrepresentations. Had Plaintiff known that the rates she would be charged by Just Energy would be substantially higher than her local utility provider, she would not have made the decision to switch.

38. Had Just Energy charged Plaintiff a rate that was actually based on business and market conditions, Plaintiff would have been charged a substantially lower rate and she was injured accordingly when she paid her bill.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action on her own behalf and additionally, pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, on behalf of a class of all of Just Energy's New York State customers who were charged a variable rate for electricity from 2011 to the present.

40. Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise control or controlled; and any officer, director, legal representative, predecessor, successor, or assignee of Defendant.

41. This action is brought as a class action for the following reasons:

   a. The Class consists of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

   b. There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

    i. whether Defendant breached its contract with New York consumers by charging variable rates not based on market conditions;

    ii. whether Defendant breached the covenant of good faith and fair dealing by exercising its unilateral price-setting discretion in bad faith, i.e., to price gouge;

    iii. whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

    iv. whether Defendant should be enjoined from continuing to charge variable rates not based on market conditions;

  c. The claims asserted by Plaintiff are typical of the claims of the members of the Class;

  d. Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including class litigation involving consumer protection and ESCOs;

  e. Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant;

  f. Defendant has acted on grounds that apply generally to the Class, namely representing that its variable rates are based on market conditions when Defendant's rates are in fact substantially higher, so that final injunctive relief prohibiting Defendant from continuing its deceptive practices is appropriate with respect to the Class as a whole;

  g. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

    i. Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendant's violations of their legal obligations will continue without remedy,

additional consumers and purchasers will be harmed, and Defendant will continue to retain its ill-gotten gains;

  ii. It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

  iii. When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

  iv. A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense and ensure uniformity of decisions;

  v. The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

  vi. Defendant has acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate.

  42. Defendant's violations of the applicable laws are applicable to all members of the Class, and Plaintiff is entitled to have Defendant enjoined from engaging in illegal and deceptive conduct in the future.

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

  43. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

  44. Plaintiff and the Class entered into a valid contract with Just Energy for the provision of electricity.

  45. Pursuant to the Agreement, Defendant agreed to charge a variable rate for electricity purportedly based on business and market conditions.

46. Pursuant to the Agreement, Plaintiff and the Class paid the variable rates charged by Defendant for electricity.

47. However, Defendant failed to perform its obligations under the Agreement because it charged variable rates for electricity that were not based on business and market conditions.

48. Plaintiff and the Class were damaged as a result because they were billed, and they paid, a charge for electricity that was substantially higher than they would have been had Defendant based its rates on business and market conditions.

49. By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## SECOND CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith & Fair Dealing)**

50. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

51. Every contract in New York contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract. The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

52. Under the contract, Defendant had unilateral discretion to set the variable rates for electricity based on market conditions.

53. Plaintiff reasonably expected that the variable rates for electricity would reflect the market prices for electricity and that Defendant would refrain from price gouging. Without these reasonable expectations, Plaintiff and other Class members would not have agreed to buy electricity from Defendant.

54. Defendant breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its unilateral rate-setting discretion to price gouge and frustrate Plaintiff and other Class members' reasonable expectations that the variable rates for electricity would be commensurate with market conditions.

55. Defendant acted in bad faith when it made contractual promises to base its rates on business and market conditions knowing full well that its rates were substantially higher than rates that are actually based on business and market conditions, including rates charged by competitors.

56. As a result of Defendant's breach, Defendant is liable to Plaintiff and other Class members for actual damages in an amount to be determined at trial and attorney's fees.

### THIRD CAUSE OF ACTION
**(Unjust Enrichment)**

57. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

58. By engaging in the conduct described above, Defendant has unjustly enriched itself and received a benefit beyond what was contemplated in the contract, at the expense of Plaintiff and the other members of the Class.

59. It would be unjust and inequitable for Defendant to retain the payments Plaintiff and the Class made for excessive electricity charges.

60. By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of which shall be determined at trial, plus attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that the Court should enter judgment against Defendant as follows:

1. Certifying this action as a class action, with a Class as defined above;

2. On Plaintiff's First Cause of Action, awarding against Defendant damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions;

3. On Plaintiff's Second Cause of Action, awarding against Defendant damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions;

4. On Plaintiff's Third Cause of Action, awarding against Defendant damages and/or injunctive relief that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions;

5. Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

6. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

Dated: June 20, 2017                    Respectfully Submitted:

/s/ D. Greg Blankinship
D. Greg Blankinship
Todd S. Garber
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com
tgarber@fbfglaw.com

Jonathan Shub*
Kevin Laukaitis*
Harper Segui*
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA  19107-3304
Tel: (215) 238-1700
Fax: (215) 238-1968
jshub@kohnswift.com
klaukaitis@kohnswift.com
hsegui@kohnswift.com
* *Pro Hac Vice Forthcoming*

Matthew R. Mendelsohn*
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel: (973) 228-9898
Fax: (973) 228-0303
mmendelsohn@mskf.net
* *Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and Putative Class*