# EXHIBIT B

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ─────────────────────────── X | | |
| ARON ROVNER and IRVING FRIEDMAN, Individually and on Behalf of All Others Similarly Situated, | : : : : | Civil Action No. 1:18-cv-02159-ENV-CLP |
| Plaintiff, | : : : | |
| vs. | : : | **CORRECTED CLASS ACTION COMPLAINT** |
| JUST ENERGY GROUP, INC., JUST ENERGY NEW YORK CORP., NATIONAL GRID PLC, NATIONAL GRID USA, THE BROOKLYN UNION GAS COMPANY; KEYSPAN GAS EAST CORPORATION, and NIAGARA MOHAWK  POWER CORPORATION, | : : : : : : : : : | |
| Defendants. | : | |
| ─────────────────────────── X | | |

Plaintiffs Aron Rovner and Irving Friedman ("Plaintiffs"), by their attorneys, Bernstein Liebhard LLP, bring this putative Class Action against Defendant Just Energy Group, Inc., Defendant Just Energy New York Corp. (collectively, "Just Energy"), Defendant National Grid PLC, Defendant National Grid USA, Defendant The Brooklyn Union Gas Company, Defendant Keyspan Gas East Corporation, and Defendant Niagara Mohawk Power Corporation (collectively, "National Grid," and, together with Just Energy, "Defendants"), and allege, with personal knowledge as to their own actions, and upon information and belief as to all other actions as follows:

## PRELIMINARY STATEMENT

1.     Plaintiffs bring this action on behalf of themselves and all other New York energy consumers (the "Class") who purchased their natural gas supply from Defendant Just Energy and who received consolidated monthly billing statements from Defendant National Grid from April

11, 2012 to the present (the "Class Period"). This action asserts claims under New York General Business Law ("GBL") §§ 349 and 349-d and under New York common law, and seeks to redress Defendants' deceptive business practices, which concealed from Plaintiffs and the Class that they were being overcharged millions of dollars for their natural gas supply.

2.      Defendant Just Energy is one of approximately two hundred energy services companies ("ESCOs") that compete with local utility companies and other ESCOs to supply New York consumers with natural gas.

3.      Defendant National Grid is a local utility company that supplies and delivers natural gas to New York consumers. Defendant National Grid is responsible for delivering gas to consumers even when they choose an ESCO as their energy supplier.

4.      Price is the primary concern for consumers when selecting an energy supplier, and the chief measure used by consumers to compare gas prices is the rate per unit of energy, or price per therm, charged. Consumers depend on transparent rates to capture cost-savings and to protect themselves from predatory energy suppliers.

5.      Throughout the Class Period, Plaintiffs and the Class contracted with Defendant Just Energy to be their natural gas supplier because they were led to believe that they were being charged reasonable rates. Defendant National Grid, acting as their local utility company, delivered the gas supplied by Defendant Just Energy to Plaintiffs and the Class.

6.      In New York, utility companies and ESCOs can bill for their independent services in a single statement known as consolidated billing. A Billing Services Agreement ("BSA") will set forth the terms of their consolidated billing arrangement. Throughout the Class Period, Defendants had a BSA under which Defendant National Grid was responsible for sending out monthly consolidated bills to Plaintiffs and the Class. These bills were supposed to include

information that clearly and separately explained Defendant National Grid's delivery charges and Defendant Just Energy's ESCO supply charges.

7.     The State of New York Public Service Commission's ("PSC") Uniform Business Practices ("UBP"), which was adopted to establish consumer protections and to streamline business transactions and communications protocols between ESCOs and utilities, governs the content required to be included on consolidated bills.  Among the key ESCO-related content that the UBP requires to be itemized on consolidated bills is the rate per unit of energy (*i.e.*, rate per therm of gas) charged by the ESCO.  This data point is essential for consumers to understand their monthly ESCO charges and to protect themselves from being overcharged for their energy.

8.     Throughout the Class Period, Defendants knowingly violated the UBP by omitting the rate per therm from the consolidated bills sent to Plaintiffs and the Class.  This omission, which violated the GBL and breached Defendant Just Energy's supply contracts with Plaintiffs and the Class, deceived Plaintiffs and the Class into believing that they were receiving reasonable rates for their gas supply, when, in fact, they were being grossly overcharged.  No reasonable consumer would have paid a premium to Defendant Just Energy had they known that they could have received the equivalent gas supply services at substantially lower rates from a different energy supplier, including their own utility company.

9.     Defendants' deceptive conduct was motivated by self-interest and greed.  Defendant Just Energy's rates were significantly higher than the rates offered by other energy suppliers, including local utility companies.  In fact, at no time during the Class Period did the Plaintiffs ever receive better rates from Defendant Just Energy than they otherwise would have had they received their energy supply directly from Defendant National Grid.

10.     Defendants profited immensely from concealing the exorbitant rates that Plaintiffs and the Class were charged.

11.     Through their actions, Defendants caused financial injury to Plaintiffs and the Class. This lawsuit seeks, *inter alia*, injunctive relief, actual damages and refunds, treble damages, attorneys' fees, the costs of bringing the lawsuit, and all other relief that this Court may deem just and proper.

### JURISDICTION AND VENUE

12.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) (the "Class Action Fairness Act").

13.     This action meets the prerequisites of the Class Action Fairness Act because the claims of Plaintiffs and the Class exceed the sum or value of $5,000,000 and, *inter alia*, a member of the Class is a citizen of a state different from any Defendant.

14.     This Court has general personal jurisdiction over Defendants because they have offices in New York, conduct and solicit substantial business in New York, and receive significant revenue from business in New York.

15.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants regularly conduct business and provide services in this District, and some of the work that is the subject of Plaintiffs' claims was performed in this District.

### PARTIES

**Plaintiffs**

16.     Plaintiff Aron Rovner is a citizen of New York residing in Brooklyn, New York. In or around 2006, Plaintiff contracted with Hudson Energy Services, LLC to supply natural gas to his residence. In December 2016, Plaintiff received notice that Hudson Energy was assigning

its residential business to its affiliate, Defendant Just Energy New York Corp., but that Plaintiff's service and the terms of his service would remain unchanged.

17.     Plaintiff Rovner started receiving consolidated billing statements reflecting Defendant Just Energy's assignment in or around March 2017.  These statements, which continue to be sent to Plaintiff on a monthly basis, omit the rate per therm charged by Defendant Just Energy.  As a result of Defendants' deceptive conduct, Plaintiff incurred excessive charges for his natural gas supply during the Class Period.

18.     Plaintiff Irving Friedman is a citizen of New York residing in Brooklyn, New York.  In or around 2006, Plaintiff contracted with Hudson Energy Services, LLC to supply natural gas to his residence.  In December 2016, Plaintiff received notice that Hudson Energy was assigning its residential business to its affiliate, Defendant Just Energy New York Corp., but that Plaintiff's service and the terms of his service would remain unchanged.

19.     Plaintiff Friedman started receiving consolidated billing statements reflecting Defendant Just Energy's assignment in or around March 2017.  These statements, which continue to be sent to Plaintiff on a monthly basis, omit the rate per therm charged by Defendant Just Energy.  As a result of Defendants' deceptive conduct, Plaintiff incurred excessive charges for his natural gas supply during the Class Period.

**Defendants**

20.     Defendant Just Energy Group, Inc. is a publicly-traded Canadian corporation incorporated under the laws of Ontario.  Defendant Just Energy Group, Inc. is a natural gas and electricity retailer operating in Canadian and American markets across North America and in the United Kingdom, Ireland, and Germany.   Just Energy Group, Inc.'s affiliates include Defendant Just Energy New York Corp. and Hudson Energy Services LLC.

21.     Defendant Just Energy New York Corp. is a Delaware company with its principal executive office located in Toronto, Ontario.  Defendant Just Energy Group, Inc. controls Just Energy New York Corp.

22.     Defendant Just Energy Group, Inc. and Defendant Just Energy New York Corp. are collectively referred to herein as "Just Energy."  Defendant Just Energy conducts business in the state of New York and maintains a business address in Buffalo, New York.

23.     Defendant National Grid PLC is a multinational electricity and gas utility company headquartered in the United Kingdom.  Defendant National Grid PLC delivers and supplies gas and electricity to consumers in the U.K. and in the northeast United States through its regional subsidiaries.

24.     Defendant National Grid USA is a subsidiary of Defendant National Grid PLC. Defendant National Grid USA is incorporated in Delaware, and headquartered in Waltham, MA. Defendant National Grid USA is responsible for supplying electricity and natural gas to residential and commercial consumers in New York, Rhode Island and Massachusetts. Defendant National Grid USA is responsible for the management and oversight of Defendant National Grid PLC's American subsidiaries.

25.     Defendant The Brooklyn Union Gas Company is a subsidiary of Defendant National Grid PLC.  Defendant The Brooklyn Union Gas Company is incorporated in Delaware and headquartered in Brooklyn, New York.  Defendant The Brooklyn Union Gas Company is responsible for supplying natural gas to New York consumers that are located within the five boroughs of New York City.

26.     Defendant Keyspan Gas East Corporationis a subsidiary of Defendant National Grid PLC.   Defendant Keyspan Gas East Corporation is incorporated in Delaware and

headquartered in Brooklyn, New York. Defendant Keyspan Gas East Corporation is responsible for supplying natural gas to New York consumers located on Long Island.

27.     Defendant Niagara Mohawk Power Corporation is a subsidiary of Defendant National Grid PLC. Defendant Niagara Mohawk Power Corporation is incorporated in Delaware and headquartered in Syracuse, New York. Defendant Niagara Mohawk Power Corporation is responsible for supplying natural gas to New York state in eastern, western, northern and central parts of New York State.

28.     Defendants National Grid PLC, National Grid USA, The Brooklyn Union Gas Company, Keyspan Gas East Corporation, and Niagara Mohawk Power Corporation are collectively referred to herein as "National Grid." These entities operate as a single utility company and use the "National Grid" brand name in New York for public-facing purposes, including marketing, billing and service matters.

**Relevant Non-Parties**

29.     Hudson Energy Services, LLC ("Hudson Energy") was founded in New York in 2002 and provides retail electricity and natural gas services to commercial, industrial, and residential customers. Hudson Energy serves markets in Texas, Illinois, New York, New Jersey, Massachusetts, Pennsylvania, Ohio, and California in the United States; Ontario and Alberta in Canada; and the United Kingdom.

30.     Hudson Energy was acquired by Defendant Just Energy on May 7, 2010, and operates as a subsidiary of Defendant Just Energy.

## STATEMENT OF FACTS

31.     In the 1990s, New York deregulated its energy market. Prior to deregulation, natural gas was supplied and delivered exclusively by local utility companies. While delivery would remain solely in the hands of the local utility companies, market deregulation invited

ESCOs to compete with local utility companies (and each other) to supply consumers with natural gas. A primary goal of market deregulation was to establish a competitive market that would give consumers more options and improve prices and service.

32.    Because there is no difference in the quality of gas supplied, or in the manner in which gas is delivered, the primary factor considered by consumers when choosing an energy supplier is price. The principal measure used by New York consumers to compare energy supply prices is the rate per unit of energy, or the price per therm for natural gas.

33.    Consumers like Plaintiffs and the Class depend on transparent gas supply rates so they can determine whether they are receiving competitive pricing or being overcharged by predatory energy suppliers. No reasonable consumer would willingly pay a premium to an energy supplier if that consumer knew that the exact same gas supply could be purchased from another energy supplier at a substantially lower rate.

34.    To ensure that there is transparency in gas supply rates, utility companies are required to file the rates that they charge with the PSC. ESCOs do not have that same requirement, but must disclose their rates on the billing statements that are sent to consumers.

35.    Many ESCOs, including Defendant Just Energy, do not bill consumers separately for their energy supply services. Instead, they enter BSAs with local utility companies and issue monthly consolidated bills that reflect both the utility's delivery and the ESCO's supply charges.

36.    Throughout the Class Period, Defendants had a BSA. Under the terms of the BSA, Defendant Just Energy was required to send Defendant National Grid information reflecting its ESCO supply charges. Defendant National Grid was then required to incorporate that information, along with information reflecting its own delivery charges, onto consolidated bills that the utility would send to Plaintiffs and the Class each month.

37.     The UBP, which establishes consumer protections for energy consumers and streamlines business transactions and communications protocols between ESCOs and utilities, governs the content required to be included on consolidated bills in New York.  Among other things, Section 9, Subsection G.4 of the UBP states that "A consolidated bill shall contain the information listed in Attachment 3, ESCO Content, separately stated for each ESCO." Attachment 3 sets forth sixteen discrete categories of ESCO-related content that must be included on consolidated bills, and, among the most important of those requirements, is the "ESCO rate per billing unit."  After all, consumers need this key data point to understand their supply charges and to protect themselves from suppliers seeking to overcharge them.

38.     Throughout the Class Period, Defendants knowingly failed to comply with the UBP, *inter alia*, by omitting the ESCO rate per billing unit from the consolidated bills sent to Plaintiffs and the Class.  Defendants' knowing omission of the rate per therm was a predatory act designed to deprive Plaintiffs and the Class of their consumer protections and also breached the supply contracts Defendant Just Energy had with Plaintiffs and the Class.  By keeping Plaintiffs and the Class in the dark about the rates that they were being charged, Defendant Just Energy deceived them into believing that they were paying competitive rates for their gas supply, when, in fact, they were being grossly overcharged.

**Plaintiff Rovner Was Overcharged for His Gas Supply**
**Due to Defendants' Deceptive Practices**

39.     In or around 2006, Plaintiff Rovner contracted with Hudson Energy, an ESCO, to supply his residence in Brooklyn, New York with natural gas.  Initially, Plaintiff Rovner had a fixed rate contract with Hudson Energy.  However, when the term of that contract expired, his contract was renewed as a variable rate, month-to-month contract.

Case 1:19-cv-02159-ENV-CLP   Document 91   Filed 05/10/28   Page 108 of 261 PageID #: 127

40.     Since 2006, Plaintiff Rovner received monthly consolidated billing statements from his utility company, Defendant National Grid, reflecting his natural gas delivery and supply charges.  The monthly bills that he received as a customer of Hudson Energy itemized the price per therm charged by the ESCO.

41.     In May 2010, Defendant Just Energy acquired Hudson Energy for $304.2 million.

42.     In or around December 2016, Plaintiff Rovner received a letter from Defendant Just Energy informing him that Hudson Energy was assigning its residential customers to its licensed affiliate, Defendant Just Energy New York Corp.  The letter, however, reassured Plaintiff Rovner that if he remained a customer of Defendant Just Energy he would "continue to receive the same excellent service from Just Energy" that he received from Hudson Energy. Furthermore, the letter represented that "[t]here will be no changes in the price, terms or conditions of service as a result of this assignment."

43.     These statements were deceptive, false, and misleading because Defendant Just Energy did not intend to provide the same service that Plaintiff Rovner previously received with Hudson Energy.  Instead, once the assignment was consummated, Defendant Just Energy violated the UBP and its contract with Plaintiff Rovner by knowingly omitting the rate per therm of gas that it charged him from the monthly consolidated bills he received.  In so doing, Defendant Just Energy purposefully kept Plaintiff Rovner in the dark about the exorbitant rates he was being charged, and deprived him of his right to protect himself by seeking a more competitive rate for his gas supply.

44.     On March 22, 2017, Defendant National Grid sent Plaintiff Rovner a consolidated bill that, for the first time, reflected the assignment of his ESCO supply services to Defendant Just Energy.  The consolidated bill did not disclose the rate per therm that Defendant Just Energy

had charged Plaintiff Rovner.  Instead, the consolidated bill only listed "ESCO Total Current Charges", which, as Defendants are aware, are meaningless in isolation because they cannot be used to compare energy supply rates or to expose price gouging by a supplier.

45.     By concealing the rate per therm charged, Plaintiff Rovner was not alerted to the fact that he was being grossly overcharged by Defendant Just Energy for his natural gas supply. Had Plaintiff Rovner known that he was paying exorbitant rates for the same gas supply that he could have received at a substantially lower cost, he would have terminated his month-to-month contract with Defendant Just Energy and changed energy suppliers.

46.     Defendants have continued to omit the rate per therm from Plaintiff Rovner's consolidated billing statements.  Defendants' actions were and are deceptive and perpetrated with actual malice or accompanied by wanton and willful disregard for Plaintiff Rovner's well-being.

47.     Defendant Just Energy was financially motivated to deceive Plaintiff Rovner by omitting the rate per therm it charged because it stood to profit tremendously from the overpayments that Plaintiff Rovner (and the Class) made as a result of this deception.

48.     Defendant Just Energy, however, could not accomplish this deception without the cooperation of Defendant National Grid, which received lucrative consideration under the parties' BSA in exchange for its participation in this deceptive scheme.  At all times relevant, Defendant National Grid could have demanded that Defendant Just Energy disclose the rate per therm charged and/or could have refused to send out consolidated bills that omitted this information.  Instead, Defendant National Grid elected to profit at the expense of Plaintiffs and the Class by knowingly sending out statements that concealed from them that they were being grossly overcharged for their gas supply.

49.     Defendants' deceptive conduct caused financial injury to Plaintiff Rovner and the Class by making them substantially overpay for their natural gas supply.  The very purpose of ESCOs is to provide consumers with better pricing options than what their incumbent utility company alone could provide.  However, as set forth in the chart below, at no time during the Class Period did Plaintiff Rovner ever receive a rate from Defendant Just Energy that was better than or equal to the rate offered by his local utility company, Defendant National Grid.

| Bill Period From | Bill Period To | Therms in Bill | ESCO Name | Total Bill with ESCO supply ($) | Total Bill with National Grid supply ($) | Difference ($) |
|---|---|---|---|---|---|---|
| 02/13/2018 | 02/28/2018 | 114 | Just Energy | 221.74 | 174.94 | 46.80 |
| 01/16/2018 | 02/13/2018 | 288 | Just Energy | 477.38 | 342.10 | 135.28 |
| 12/19/2017 | 01/16/2018 | 390 | Just Energy | 558.64 | 366.57 | 192.07 |
| 11/17/2017 | 12/19/2017 | 269 | Just Energy | 416.15 | 291.06 | 125.09 |
| 10/17/2017 | 11/17/2017 | 140 | Just Energy | 248.22 | 172.93 | 75.29 |
| 09/18/2017 | 10/17/2017 | 89 | Just Energy | 190.52 | 141.10 | 49.42 |
| 08/15/2017 | 09/18/2017 | 78 | Just Energy | 161.89 | 120.03 | 41.86 |
| 07/17/2017 | 08/15/2017 | 57 | Just Energy | 117.28 | 96.94 | 20.34 |
| 06/15/2017 | 07/17/2017 | 65 | Just Energy | 123.93 | 115.68 | 8.25 |
| 05/16/2017 | 06/15/2017 | 93 | Just Energy | 153.99 | 142.87 | 11.12 |
| 04/17/2017 | 05/16/2017 | 112 | Just Energy | 170.12 | 156.03 | 14.09 |
| 03/16/2017 | 04/17/2017 | 220 | Just Energy | 294.36 | 260.10 | 34.26 |
| 02/28/2017 | 03/16/2017 | 172 | Just Energy | 215.07 | 180.08 | 34.99 |

50.     To the contrary, Plaintiff Rovner substantially overpaid for his gas supply by contracting with Defendant Just Energy.  He would not have continued to contract with Defendant Just Energy had Defendant Just Energy been transparent about its supply rates.

**Plaintiff Friedman Was Overcharged for His Gas Supply
Due To Defendants' Deceptive Practices**

51.     In or around 2006, Plaintiff Friedman contracted with Hudson Energy, an ESCO, to supply his residence in Brooklyn, New York with natural gas.  Initially, Plaintiff Friedman had a fixed rate contract with Hudson Energy.  However, when the term of that contract expired, his contract renewed as a variable rate, month-to-month contract.

52.     Since 2006, Plaintiff Friedman received monthly consolidated billing statements from his utility company, Defendant National Grid, reflecting his natural gas delivery and supply charges.  The monthly bills that he received as a customer of Hudson Energy itemized the price per therm charged by the ESCO.

53.     In May 2010, Defendant Just Energy acquired Hudson Energy for $304.2 million.

54.     In or around December 2016, Plaintiff Friedman received a letter from Defendant Just Energy informing him that Hudson Energy was assigning its residential customers to its licensed affiliate, Defendant Just Energy New York, Corp.  The letter reassured Plaintiff Friedman that if he remained a customer of Defendant Just Energy, he would "continue to receive the same excellent service from Just Energy" that he received from Hudson Energy.  Furthermore, the letter represented that "[t]here will be no changes in the price, terms or conditions of service as a result of this assignment."

55.     These statements were deceptive, false, and misleading because Defendant Just Energy did not intend to provide the same service that Plaintiff Friedman had previously received with Hudson Energy.  Instead, once the assignment was consummated, Defendant Just Energy proceeded to violate the UBP and its contracts with Plaintiff Friedman by knowingly omitting the rate per therm of gas that it charged him from the monthly consolidated bills that he received.  In so doing, Defendant Just Energy knowingly kept Plaintiff Friedman in the dark about the exorbitant rates he was being charged, and deprived him of his right to seek more competitive rates for his gas supply.

56.     On March 24, 2017, Defendant National Grid sent Plaintiff Friedman a consolidated bill that, for the first time, reflected the assignment of his ESCO supply services to Defendant Just Energy.  The consolidated bill did not disclose the rate per therm that Defendant

Case 1:19-cv-02159-ENV-CLP   Document 91   Filed 05/10/18   Page 12 of 25 PageID #: 131

Just Energy had charged Plaintiff Friedman.  Instead, the consolidated bill only listed "ESCO Total Current Charges", which, as Defendants are aware, are meaningless in isolation because they cannot be used to compare energy supply rates or to expose price gouging by a supplier.

57.    By concealing the rate per therm charged, Plaintiff Friedman was not alerted to the fact that he was being grossly overcharged by Defendant Just Energy for his natural gas supply.  Had Plaintiff Friedman known that he was paying exorbitant rates for the same gas supply that he could have received at a substantially lower cost, he would have terminated his month-to-month contract with Defendant Just Energy and changed energy suppliers.

58.    Defendants have continued to omit the rate per therm from Plaintiff Friedman's consolidated billing statements.  Defendants' actions were and are deceptive and perpetrated with actual malice or accompanied by wanton and willful disregard for Plaintiff Friedman's well-being.

59.    Defendant Just Energy was financially motivated to deceive Plaintiff Friedman by omitting the rate per therm it charged because it stood to profit tremendously from the overpayments that Plaintiff Friedman (and the Class) made as a result of this deception.

60.    Defendant Just Energy, however, could not accomplish this deception without the cooperation of Defendant National Grid, which received lucrative consideration under the parties' BSA in exchange for its participation in this deceptive scheme.  At all times relevant, Defendant National Grid could have demanded that Defendant Just Energy disclose the rate per therm charged and/or could have refused to send out consolidated bills that omitted this information.  Instead, Defendant National Grid elected to profit at the expense of Plaintiffs and the Class by knowingly sending out statements that concealed from them that they were being grossly overcharged for their gas supply.

61.     Defendants' deceptive conduct caused financial injury to Plaintiff Friedman and the Class by making them substantially overpay for their natural gas supply.  The purpose of ESCOs is to provide consumers with better pricing options than what their utility company alone could provide.  However, as set forth in the chart below, at no time during the Class Period did Plaintiff Friedman ever come receive a rate from Defendant Just Energy that was better than the rate offered by his local utility company, Defendant National Grid.

| Bill Period From | Bill Period To | Therms in Bill | ESCO Name | Total Bill with ESCO supply ($) | Total Bill with National Grid supply ($) | Difference ($) |
|---|---|---|---|---|---|---|
| 01/18/2018 | 02/15/2018 | 320 | Just Energy | 531.14 | 383.97 | 147.17 |
| 12/19/2017 | 01/18/2018 | 508 | Just Energy | 718.45 | 466.10 | 252.35 |
| 11/20/2017 | 12/19/2017 | 258 | Just Energy | 396.89 | 278.62 | 118.27 |
| 10/19/2017 | 11/20/2017 | 140 | Just Energy | 249.71 | 175.70 | 74.01 |
| 09/18/2017 | 10/19/2017 | 34 | Just Energy | 93.10 | 74.61 | 18.49 |
| 08/18/2017 | 09/18/2017 | 22 | Just Energy | 64.00 | 53.01 | 10.99 |
| 07/19/2017 | 08/18/2017 | 14 | Just Energy | 46.33 | 41.71 | 4.62 |
| 06/19/2017 | 07/19/2017 | 11 | Just Energy | 39.28 | 38.67 | 0.61 |
| 05/18/2017 | 06/19/2017 | 33 | Just Energy | 77.82 | 74.69 | 3.13 |
| 04/19/2017 | 05/18/2017 | 76 | Just Energy | 128.32 | 118.98 | 9.34 |
| 03/20/2017 | 04/19/2017 | 166 | Just Energy | 241.15 | 216.95 | 24.20 |
| 02/28/2017 | 03/20/2017 | 216 | Just Energy | 262.96 | 218.73 | 44.23 |

62.     To the contrary, Plaintiff Friedman always overpaid for his gas supply by contracting with Defendant Just Energy.  He would not have continued to contract with Defendant Just Energy had Defendant Just Energy been transparent about its supply rates.

63.     Defendants' violations of GBL § 349 and GBL § 349-d and the common law are applicable to all members of the Class, and Plaintiffs and the Class are entitled to have Defendant enjoined from engaging in illegal and deceptive conduct in the future.

**Defendant Just Energy's History of Deceptive Marketing Practices**

64.     This is not the first time that Defendant Just Energy has engaged in deceptive business practices.  In fact, Defendant Just Energy has historically gained market share in New York and elsewhere by luring consumers through deceptive marketing.

65.     In July 2008, for example, the Attorney General of New York, Andrew M. Cuomo, brought an action against Defendant Just Energy for deceptive marketing and sales practices after receiving hundreds of consumer complaints that sales contractors promised immediate savings on utility bills, but the price of gas was actually more than the price charged by the local utility.  The settlement of that action required Defendant Just Energy (formerly known as U.S. Energy Savings) to waive hundreds of thousands of dollars in residential consumer termination fees and pay $200,000 in costs and penalties to the state of New York.  The settlement also implemented a series of comprehensive reforms in order to ensure that customers are given accurate, up-front information regarding their service agreements by Defendant Just Energy's sales staff.

66.     The Attorney General of Illinois, Lisa Madigan, also filed a lawsuit against Defendant Just Energy in 2008 for using misleading sales tactics to sell gas contracts.  According to Attorney General Madigan, "U.S. Energy Savings (now Just Energy) is purposely deceiving consumers … Many of these families signed up for this program based on the false claim that they would save on their monthly utility bills.  Instead, U.S. Energy locked them into a contract that actually charged them more for natural gas."

67.     In January 2014, a report by the Better Business Bureau gave Defendant Just Energy an "F" rating, and noted, *inter alia*, that the "BBB files indicate that this business has a large volume and pattern of complaints concerning misleading sales practices.  Consumer complaints allege that door to door sales persons are misleading consumers, providing false information and using high pressure sales tactics.  This company has been notified of our concerns.  They have failed to correct the underlying reason for the complaints."

68.     Defendant Just Energy's deceptive sales practices also have been the subject of a lawsuit brought by the former Attorney General of Massachusetts, Martha Coakley.  In January 2015, the Attorney General of Massachusetts secured a $4 million settlement against Defendant Just Energy as a result of the ESCO's deceptive sales practices.  According to the settlement, Defendant Just Energy lured consumers in Massachusetts into contracts and then charged rates that were higher than the electricity supply rates provided by local utility companies NSTAR and Defendant National Grid.  Defendant Just Energy also pushed elderly and non-native English speakers into contracts by continuing to offer electricity supply services to them even after it became clear that they did not understand the terms of the contracts.  Furthermore, according to the settlement, consumers in Massachusetts were switched to Defendant Just Energy without authorization, and termination fees worth tens of thousands of dollars were charged to small business owners who were not advised of those charges.

69.     The foregoing demonstrates that Defendant Just Energy has not learned from its past deceptive conduct, even where that deceptive conduct has resulted in settlements with state Attorneys General, but instead has continued to find new ways to deceive energy consumers. Defendant Just Energy should not be allowed to continue to profit through deception at the expense of consumers like Plaintiffs and the Class.

## CLASS ALLEGATIONS

70.     Plaintiffs bring this Class Action pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Class of all similarly situated energy consumers in New York who had contracts with Defendant Just Energy for their natural gas supply and received monthly billing statements from Defendant National Grid that omitted the rate per therm charged by Defendant Just Energy from April 11, 2012 through the present.

71.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment of the complaint.

72.     Excluded from the Class are Defendants; any parent, subsidiary or affiliate of Defendants; any entity in which any Defendant has or had a controlling interest, or which Defendant otherwise control or controlled; and any officer, director, legal representative, predecessor, successor, or assignee of a Defendant.

73.     This action is properly maintainable as a Class Action.  The proposed Class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable. There are questions of law or fact common to all Class Members that predominated over any questions affecting only individual members, which include:

- whether Defendants violated N.Y. G.B.L § 349 and N.Y. G.B.L § 349-d;

- whether Defendant Just Energy breached its contracts with Plaintiffs and the Class;

- whether Plaintiffs and the Class have sustained damages and, if so, the proper measure thereof; and

- whether Defendants should be enjoined from continuing to omit the rates they charge from their consolidated billing statements.

74.     Moreover, the named Plaintiffs' claims, one or any one of them, are typical of those of the proposed Class because the Plaintiffs' claims are based upon the same facts and circumstances (practice or course of conduct) that give rise to the claims of the other Class Members and based upon the same predominate legal theories.

75.     The named Plaintiffs can also adequately and fairly represent the Class.  No conflict of interest exists between the Plaintiffs and the Class Members because Defendants' alleged conduct affected them similarly.

76.     Moreover, Plaintiffs and their chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution.

77.     In addition, Plaintiffs' attorneys are competent in the areas of law relevant to this Complaint and have sufficient experience and resources to vigorously represent the Class Members and prosecute this action.

78.     A class action is superior to any other available method for adjudicating this controversy.  The proposed Class is (i) the surest way to fairly and expeditiously compensate so large a number of injured persons that constitute the Class, (ii) to keep the courts from being inundated by thousands of repetitive cases, and (iii) to reduce transactions costs so that the injured Class Members can obtain the most compensation possible.  Accordingly, class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious wasteful litigation relevant to this action.

## CLAIMS FOR RELIEF

### COUNT I
### Against All Defendants (Violation of N.Y. General Business Law § 349)

79.     Plaintiffs incorporate by reference the allegations in all the paragraphs set forth above, as if fully set forth herein, and further allege:

80.     GBL § 349 provides, *inter alia*, that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful. GBL § 349(a).

81.     The false, deceptive, and misleading statements and omissions made by Defendants with respect to Defendant Just Energy's gas supply charges, as described above,

constitute deceptive acts and practices in the conduct of business, trade, or commerce in violation of the GBL.

82. Defendants knowingly omitted to disclose the rate per therm of gas that Defendant Just Energy charged on monthly consolidated bills sent to Plaintiffs and the Class in violation of the UBP. Defendants likewise failed to disclose that Defendant Just Energy's rates are substantially higher than the rate per therm charged by local utility companies, including Defendant National Grid. This information would have been material to any reasonable consumer deciding whether to purchase natural gas from Defendant Just Energy. No reasonable consumer would have paid a premium for Defendant Just Energy to supply them with natural gas if the consumer knew that the equivalent gas supply could be purchased at a substantially lower rate from another energy supplier.

83. Plaintiffs and the Class entered into agreements to purchase natural gas from Defendant Just Energy and suffered ascertainable loss as a direct and proximate result of Defendants' actions in violation of the GBL.

84. As a consequence of the wrongful actions of Defendants, Plaintiffs and the Class suffered an ascertainable loss of monies based on the difference in the rates they were charged versus the rates they could have been charged by other energy suppliers, including Defendant National Grid, had they known that Defendant Just Energy was price gouging them.

85. Plaintiffs and the Class suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they would not have entered into agreements to purchase natural gas and/or electricity from Defendant Just Energy, or they would have switched energy suppliers, if the true facts concerning their rates had been known.

86.     By reason of the foregoing, Defendants are liable to Plaintiffs and the Class for actual damages or $50.00 for each violation, whichever is greater; punitive damages; injunctive relief, attorneys' fees, and the costs of this suit.

87.     Defendants' misconduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the well-being of Plaintiffs and the Class.  Defendants are therefore additionally liable for punitive damages, in an amount to be determined at trial.

**COUNT II**
**Against Defendant Just Energy**
**(Violation of N.Y. General Business Law § 349-d)**

88.     Plaintiffs incorporate by reference the allegations in all the paragraphs set forth above, as if fully set forth herein, and further allege:

89.     GBL § 349-d(3) provides that "[n]o person who sells or offers for sale any energy services for, or on behalf of, an ESCO shall engage in any deceptive acts or practices in the marketing of energy services."

90.     GBL § 349-d(l0) provides that "any person who has been injured by reason of any violation of this section may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to ten thousand dollars, if the court finds the defendant willfully or knowingly violated this section.   The court may award reasonable attorney's fees to a prevailing plaintiff."

91.     Defendant Just Energy knowingly and willfully represented to Plaintiffs and the Class that they would comply with all applicable laws.

92.     Nevertheless, Defendant Just Energy knowingly and willfully concealed from Plaintiffs and the Class the rate per unit of energy that it charged them on their monthly consolidated bills in violation of the UBP.  In so doing, Defendant Just Energy deceived Plaintiffs and the Class into believing that its rates were competitive, when, in fact, they were substantially higher than the rates available from other energy suppliers, including the local utility companies.

93.     Through the conduct described above, Defendant Just Energy engaged in deceptive acts and practices that resulted in injury to Plaintiffs and the Class.

94.     By reason of the foregoing, Defendant Just Energy violated GBL § 349-d, and should be enjoined from continuing to fail to disclose its rate per therm.

95.     Defendant Just Energy is also liable to Plaintiffs and the Class for the damages that they suffered as a result of its actions, with the amount of such damages to be determined at trial but not less than $500.00 for each violation, with such damages to be trebled, plus attorneys' fees and costs.

**COUNT III**
**Against Defendant Just Energy (Breach of Contract)**

96.     Plaintiffs incorporate by reference the allegations in all the paragraphs set forth above, as if fully set forth herein, and further allege:

97.     Plaintiffs and the Class entered into valid contracts with Defendant Just Energy for the supply of natural gas.

98.     Pursuant to those contracts, Defendant Just Energy agreed that its charges would appear on monthly consolidated billing statements issued by the local utility.  According to the contracts, Plaintiffs and the Class will be billed "in accordance with PSC approved methods and

Just Energy's charges will appear on the bill together with the amounts charged to the Customer by the Utility for delivery services."

99.   Pursuant to the contracts, Defendant Just Energy also agreed to comply with applicable law, including the UBP.

100.   Pursuant to the contracts, Plaintiffs and the Class paid the rates charged by Defendant Just Energy for their natural gas supply.

101.   However, Defendant Just Energy failed to perform its obligations under the contracts because Defendant Just Energy did not include the rate per therm it charged customers on monthly billing statements in violation of the UBP.

102.   Plaintiffs and the Class were damaged as a result because they were billed, and they paid, a charge for natural gas that was substantially higher than they would have paid had Defendant Just Energy included its rates and alerted them to the fact that they were being price gouged.

103.   By reason of the foregoing, Defendant Just Energy is liable to Plaintiffs and the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees.

**COUNT IV**
**Against Defendant Just Energy**
**(Breach of Implied Covenant of Good Faith & Fair Dealing)**

104.   Plaintiffs incorporate by reference the allegations in all the paragraphs set forth above, as if fully set forth herein, and further allege:

105.   Every contract in New York contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract.  The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

106. Under the contracts, Defendant Just Energy had unilateral discretion to set the rates it charged Plaintiffs and the Class for natural gas.

107. Plaintiffs and the Class reasonably expected that Defendant Just Energy's rates for natural gas would generally reflect the market price for natural gas and not substantially exceed that price. They likewise reasonably expected that Defendant Just Energy would refrain from price gouging them, and would, at a minimum, disclose the rate per therm that they charged on the consolidated monthly billing statements sent to Plaintiffs and the Class.

108. Without these reasonable expectations, Plaintiffs and other Class would not have agreed to buy natural gas from Defendant Just Energy.

109. Defendant Just Energy breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its unilateral rate-setting discretion to price gouge and frustrate the reasonable expectation of Plaintiffs and the Class.

110. Defendant Just Energy further breached the implied covenant of good faith and fair dealing by knowingly concealing the rate per therm that it charged Plaintiffs and the Class so that they would not be alerted to the fact that they were being price gouged and could have received better rates from their incumbent utilities. In so doing, Defendant Just Energy acted in bad faith.

111. As a result, Defendant Just Energy is liable to Plaintiffs and the Class for actual damages in an amount to be determined at trial, plus attorney's fees.

### COUNT V
### Against All Defendants (Unjust Enrichment)

112. Plaintiffs incorporate by reference the allegations in all the paragraphs set forth above, as if fully set forth herein, and further allege:

113.     By engaging in the conduct described above, Defendants enriched themselves and received a benefit beyond what was contemplated in the contracts, at the expense of Plaintiffs and the Class.

114.     It would be unjust and inequitable for Defendants to retain the payments Plaintiffs and the Class made for excessive natural gas charges.

115.     By reason of the foregoing, Defendants are liable to Plaintiffs and the Class for the damages that they have suffered as a result of Defendants' actions, the amount of which shall be determined at trial, plus attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court:

A.     Issue an order certifying the Class defined above, appointing the Plaintiffs as Class representatives, and designating their Attorneys as Class Counsel;

B.     Find that Defendants have committed the violations of law alleged herein;

C.     Enter an order granting monetary relief and treble damages on behalf of the Class;

D.     Determine that Defendant Just Energy breached its contracts with Plaintiffs and the Class and enter an appropriate order awarding monetary and injunctive relief;

E.     Determine that Defendants have been unjustly enriched as a result of their wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Class;

F.     Enter an order granting all appropriate relief on behalf of Plaintiffs and the Class under the applicable state laws;

G.     Render an award of compensatory damages, the amount of which is to be determined at trial;

H.     Render an award of punitive damages;

I.      Enter judgment including interest, costs, reasonable attorneys' fees, costs, and

expenses; and

J.      Grant all such other relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated:  August 10, 2018                    **BERNSTEIN LIEBHARD LLP**

                                           */s/ Stanley D. Bernstein*
                                           Stanley D. Bernstein (bernstein@bernlieb.com)
                                           Laurence J. Hasson (hasson@bernlieb.com)
                                           10 East 40th Street
                                           New York, New York 10016
                                           Telephone: (212) 779-1414
                                           Facsimile:  (212) 779-3218

                                           *Attorneys for Plaintiffs and The Class*